UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

48TH AMERICAS LLC,

     Plaintiff,

   v.

THE GAP, INC.,

     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.:  20-cv-03471(PGG) (SN)

**ANSWER TO FIRST AMENDED
COMPLAINT AND
AFFIRMATIVE DEFENSES
WITH COUNTERCLAIMS**

**DEMAND FOR JURY TRIAL**

   The COVID-19 pandemic has presented unique and unprecedented circumstances that were unforeseeable—indeed, unimaginable—at the time this lease was executed. The disease is highly contagious and its spread has been rapid. The government's reaction was profound and has prevented the store from opening its doors for months. To protect the health and safety of its employees, customers, and the surrounding community, and comply with applicable law, Gap was required to close this store and keep it closed. And like innumerable other companies, it was required to make the difficult decision to furlough this store's employees—and tens of thousands more for closed stores across the country—to preserve its finances while revenue from the stores dropped to zero overnight. Even now, as government restrictions begin to ease for some activities and types of businesses but not others, the disease remains virulent, and extensive guidelines are required to be followed that may provide some measure of protection, but will radically change the shopping experience for a long time to come. Indeed, shopping for apparel in physical stores will look nothing like what was contemplated by the lease when it was executed. In a world of unforeseeable events, the circumstances the store has faced are at the extreme end of unforeseeability. These circumstances not only impose a severe and irreparable

hardship on Gap, they frustrated the express purpose of this lease and made the principal object of the lease illegal, impossible, and impracticable, all for a period of time that remains unknown and unknowable. Thus, the subject lease and applicable law nullified any obligation to pay rent from mid-March through the present, entitle Gap to a refund of rent and expenses it paid in advance for March 2020, and require that the lease be rescinded and terminated or, at a minimum, modified as a matter of law.

Accordingly, Defendant The Gap, Inc. ("Gap" or "Tenant"), by and through counsel, for their Answer, Affirmative Defenses, and Counterclaims to Plaintiff's First Amended Complaint (the "Complaint"), state as follows:[1]

## NATURE OF CLAIMS[2]

1.      Paragraph 1 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Tenant admits that Plaintiff 48th Americas LLC ("Landlord") seeks damages and attorney's fees, denies that Tenant failed to comply with the terms and conditions of the "Lease" (as defined in the Complaint), and respectfully refers the Court to that document for its contents. Tenant further denies that Tenant is liable for damages or attorney's fees. All other allegations in this paragraph, including all mischaracterizations of the document, are denied.

---

[1] Tenant's counterclaims are fully incorporated into its answer and responses to the allegations of the Complaint. For the avoidance of doubt, Tenant denies each and every allegation in the Complaint, including headings, unless expressly admitted.

[2] This Answer uses the headings set forth in the Complaint solely for the Court's ease of reference and Tenant denies the allegations contained in the headings unless expressly admitted.

2.      Upon information and belief, Tenant admits that Landlord is the landlord of the building and real property located at and known as 1212 Avenue of the Americas, New York, New York 10036 (the "Building"). All other allegations in this paragraph are denied.

3.      Tenant admits that it entered a written commercial lease, dated February 25, 1991, with 48th Americas Company (the "Initial Lease"). Upon information and belief, 48th Americas Company is the predecessor-in-interest to Landlord. All other allegations in this paragraph are denied.

4.      Based upon the information presently available, and upon information and belief, Tenant admits Company transferred title to the Building to Plaintiff and lacks sufficient information to admit or deny all other allegations in paragraph 4 and on that basis denies them.

5.      Tenant admits that the parties entered a Lease Extension and Modification Agreement on or about September 22, 2004 (the "First Amendment"), and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the document, are denied.

6.      Tenant admits that the parties entered a Second Lease Extension and Modification Agreement on or about May 18, 2015 (the "Second Amendment"), and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the document, are denied.

7.      Tenant admits that, pursuant to the Lease, Tenant was demised those portions of the Building stated in the Lease (the "Premises"). All other allegations in this paragraph are denied.

8.      Paragraph 8 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Tenant denies that it breached the terms and

conditions of the Lease and denies that it owes rent or additional rent to Landlord.  All other allegations in this paragraph are denied.

## PARTIES

9.      Upon information and belief, Tenant admits that Landlord is a New York limited liability company with its principal place of business in New York.

10.     Tenant admits the allegations in paragraph 10.

## JURISDICTION AND VENUE

11.     Paragraph 11 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant admits that the Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

12.     Paragraph 12 of the Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Tenant admits that venue is proper in this Court.

## THE RELEVANT TERMS AND CONDITIONS OF THE LEASE

13.     Paragraph 13 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

14.     Paragraph 14 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

15.     Paragraph 15 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and

respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

      16.    Paragraph 16 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

      17.    Paragraph 17 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

      18.    Paragraph 18 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

      19.    Paragraph 19 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

      20.    Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

**DEFENDANT'S [ALLEGED] FAILURE, IN BREACH OF THE LEASE, TO PAY RENT**

21.     Paragraph 21 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that any fixed or additional rent is due, or that it otherwise breached its obligations under the Lease. All other allegations in this paragraph are denied.

22.     Paragraph 22 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that any amount is due to Landlord from Tenant. All other allegations in this paragraph are denied.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract/Money Damages)**

23.     Tenant repeats, realleges, and incorporates its responses contained in paragraphs 1 through 22 above.

24.     Paragraph 24 of the Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Tenant admits that a valid contract, *i.e.*, the Lease, once existed between Tenant and Landlord, but, for the reasons stated in its counterclaims, Tenant denies that the Lease remains a valid, enforceable contract. All other allegations in this paragraph are denied.

25.     Paragraph 25 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that Landlord complied with its obligations under the Terms of the Lease. All other allegations in this paragraph are denied.

26.     Paragraph 26 of the Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Tenant denies that it failed to comply with the terms and conditions of the Lease, and states that it complied with all the terms and conditions of

6

the Lease, except those obligations which were excused, or rendered impossible, illegal, or impracticable. All other allegations in this paragraph are denied.

27.     Paragraph 27 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that it failed to comply with the terms and conditions of the Lease, and states that it complied with all the term and conditions of the Lease, except those obligations which were excused or rendered illegal, impossible or impracticable. All other allegations in this paragraph are denied.

28.     Paragraph 28 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that it is liable to Landlord for money damages in any amount. All other allegations in this paragraph are denied.

29.     Paragraph 29 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, for the reasons stated in Tenant's counterclaims, Tenant denies that it has an obligation to pay Landlord rent under the Lease. All other allegations in this paragraph are denied.

## SECOND CLAIM FOR RELIEF
### (Attorney's Fees)

30.     Tenant repeats, realleges, and incorporates its responses contained in paragraphs 1 through 29 above.

31.     Paragraph 31 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that it is liable to Landlord for any attorney's fees or expenses.  Tenant further states that, to the extent it provides only for the unilateral recovery of attorneys' fees, under the circumstances Article 19 is unconscionable and an unenforceable penalty. All other allegations in this paragraph are denied.

32.     Paragraph 32 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant states that the Lease speaks for itself and respectfully refers the Court to that document for its contents. All other allegations in this paragraph, including all mischaracterizations of the Lease, are denied.

33.     Paragraph 33 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that Landlord commenced this action to enforce its rights and remedies and states that Landlord's claims are without merit and its Complaint is harassing and retaliatory. Tenant further denies that it is liable to Landlord for any attorney's fees or expenses.  All other allegations in this paragraph are denied.

34.     Paragraph 34 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that Landlord has incurred attorney's fees and expenses as a result of Tenant's breach of the Lease. Tenant further denies that it is liable to Landlord for any attorney's fees or expenses.  Tenant further states that, to the extent it provides only for the unilateral recovery of fees, under the circumstances Article 19 is unconscionable and an unenforceable penalty. All other allegations in this paragraph are denied.

35.     Paragraph 35 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that it is liable to Landlord for any attorney's fees or expenses.  Tenant further states that, to the extent it provides only for the unilateral recovery of fees, under the circumstances Article 19 is unconscionable and an unenforceable penalty. All other allegations in this paragraph are denied.

36.     Paragraph 36 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Tenant denies that it is liable to Landlord for any attorney's fees or expenses. Tenant further states that, to the extent it provides only for the

unilateral recovery of fees, under the circumstances Article 19 is unconscionable and an unenforceable penalty. All other allegations in this paragraph are denied.

## PRAYER FOR RELIEF

Tenant denies Landlord is entitled to any judgment or relief against it whatsoever, including the relief sought in the WHEREFORE clause following paragraph 36, and therefore specifically denies paragraphs 1-3 of such WHEREFORE clause.

## AFFIRMATIVE DEFENSES

Tenant asserts the following affirmative defenses. The allegations and claims set forth in Tenant's counterclaims are fully incorporated into these affirmative defenses, along with Tenant's responses in its Answer to Landlord's Complaint, as if fully asserted below.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.      The Complaint fails to state a claim upon which relief may be granted based on, including but not limited to, the reasons stated in Tenant's counterclaims.

### SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

2.      Landlord has failed to comply with its duty to mitigate and to act in a commercially reasonable manner. Landlord has taken no steps to mitigate its alleged damages whatsoever. To the extent Tenant is found to owe any amount to Landlord, that amount must be offset by the amount Landlord has received in mitigation or would have received if Landlord had fully performed its obligation to mitigate damages.

### THIRD AFFIRMATIVE DEFENSE
### (Rescission)

3.      The express purpose of the Lease was to allow Tenant to use the Premises as a retail apparel store. Due to unforeseeable events related to the COVID-19 pandemic, all of which

were outside of Tenant's control, Tenant was deprived of the intended use and such use became impossible, illegal and/or impracticable. As a result, the purpose and object of the Lease was frustrated, impossible, illegal and commercially impracticable; Tenant's performance became frustrated, impossible, illegal, and impracticable; and the consideration Tenant received in exchange for entering the lease failed. Tenant is entitled to judicial rescission of the Lease.

## FOURTH AFFIRMATIVE DEFENSE
### (Reformation)

4.      The express purpose of the Lease was to allow Tenant to use the Premises as a retail apparel store. Due to unforeseeable events related to the COVID-19 pandemic, all of which were outside of Tenant's control, Tenant was deprived of the intended use and such use became impossible, illegal and/or impracticable. As a result, the purpose and object of the Lease was frustrated, impossible, illegal and commercially impracticable; Tenant's performance became frustrated, impossible, illegal, and impracticable; and the consideration Tenant received in exchange for entering the lease failed. Tenant is entitled to judicial reformation of the Lease.

## FIFTH AFFIRMATIVE DEFENSE
### (Termination of Lease)

5.      Article 10 of the Lease states: "If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease." The express purpose of the Lease was to allow Tenant to use the Premises as a retail apparel store.

6.      Due to civil orders issued in response to the COVID-19 crisis, the use of the Premises became illegal under applicable law, amounting to a condemnation, such that the Lease automatically terminated as of the date of the first such civil order.

7.      Tenant's inability to use the Premises as intended based on civil orders and/or other factors arising from COVID-19 also triggered the termination of the Lease under other applicable provisions or, in the alternative, effected Tenant's right to terminate the Lease.

8.      Tenant is entitled to a declaratory judgment affirming the termination or, in the alternative, Tenant's right to terminate the Lease at its election.

**SIXTH AFFIRMATIVE DEFENSE**
**(No Rent Owed)**

9.      Article 9(c) of the Lease states:  "If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionally paid up to the time of the casualty and thenceforth shall cease until 30 days after the date when the premises shall have been repaired and restored by Owner or when Tenant reopens for business, whichever shall first occur, subject to Owner's right to elect not to restore the same as hereinafter provided."

10.     The only Permitted Uses under the Lease are "retail uses … and for no other purpose."

11.     By operation of law, none of the Permitted Uses were allowed.

12.     Therefore, Tenant does not owe Landlord rent, and/or Tenant's obligation to pay rent was excused.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Offset)**

13.     Prior to the COVID-19 crisis, Landlord overcharged Tenant for rent and other charges under the Lease. A reconciliation and calculation of those excess rent and other charges is ongoing. In addition, during and after the COVID-19 crisis, Landlord refused to reimburse Tenant for the excess charges of rent attributable to the time that Tenant was deprived of its use of the Premises. To the extent that the Court finds Tenant owes Landlord, Tenant's liability to Landlord must be offset in whole or in part by the amounts that Landlord owes Tenant.

**EIGHTH AFFIRMATIVE DEFENSE**
**(No Duty)**

14.     With respect to the alleged rights, claims and obligations that Landlord seeks to enforce against Tenant, Tenant owed no duty to Landlord, and, therefore, Tenant is not liable to Landlord for damages.

**NINTH AFFIRMATIVE DEFENSE**
**(Estoppel)**

15.     Landlord is estopped from enforcing any of the alleged rights, claims and obligations it seeks to enforce against Tenant.

**TENTH AFFIRMATIVE DEFENSE**
**(Frustration of Purpose)**

16.     Tenant's obligation to perform any of its alleged obligations under the Lease was excused because the purpose and object of the Lease was frustrated. Tenant's ability to use the Premises was the express purpose of the Lease, as both parties understood at the time of contracting, and without Tenant's ability to use the Premises, the transaction that the parties entered into that resulted in the Lease makes no sense.

12

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure of Consideration)

17.     Tenant's obligation to perform any of its alleged obligations under the Lease was

excused for a failure of consideration.

## TWELFTH AFFIRMATIVE DEFENSE
### (Impossibility)

18. Tenant's obligation to perform any of its alleged obligations under the Lease was excused

because the purpose, object, and performance of the Lease became impossible.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Illegality)

19. Tenant's obligation to perform any of its alleged obligations under the Lease was excused

because the purpose, object, and performance of the Lease became illegal.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Commercial Impracticability)

20. Tenant's obligation to perform any of its alleged obligations under the Lease was excused

because the purpose, object, and performance of the Lease became commercially

impracticable.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Actions of Landlord and Third Parties)

21. Tenant's obligation to perform any of its alleged obligations under the Lease was excused by

Landlord's actions or the actions of third parties.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Lack of Damages)

22. Landlord has not suffered any damages as a result of any actions taken by Tenant, and

Landlord is barred from asserting any cause of action against Tenant.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(Breach of Contract)**

23. Landlord failed to comply with the terms of the Lease and is therefore barred from asserting any cause of action against Tenant, or its claimed damages must be offset by the amount of damages caused by Landlord's own failure to comply with the Lease.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

24. Each of the alleged causes of action contained in the Complaint is barred by the equitable doctrine of unclean hands.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Unconscionability)**

25. The interpretation of the Lease advocated by the Landlord in its complaint would be unconscionable and, if adopted, would render the Lease unenforceable. Further, to the extent it provides only for the unilateral recovery of fees, under the circumstances Article 19 is unconscionable and unenforceable as a penalty.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(Mistake)**

26. Landlord's Complaint and each and every cause of action in it is barred by the parties' unilateral or bilateral mistake.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(Failure of Condition Precedent)**

27. Landlord's Complaint and each and every cause of action in it is barred by a failure of a condition precedent to Tenant's alleged obligation to pay rent and expenses.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Other Affirmative Defenses)

28. The Complaint does not describe the claims made against Tenant with sufficient particularity
    to enable Tenant to determine each and every defense it may have. Tenant therefore
    expressly reserves the right to assert any additional defenses, including affirmative defenses,
    which may be discovered or become relevant in the future.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff The Gap, Inc. ("Gap" or "Tenant"), by and through counsel, as and for its counterclaims against Plaintiff/Counterclaim Defendant 48th Americas LLC ("Landlord"), states as follows. The allegations and claims in these counterclaims are fully incorporated into Gap's answer and affirmative defenses above.

## NATURE OF THE CLAIMS

1.       The COVID-19 pandemic has presented unique and unprecedented circumstances that were unforeseeable—indeed, unimaginable—at the time the Lease (as defined below) was executed. The disease is highly contagious and its spread has been rapid. The government's reaction was profound and has prevented the Gap store at issue in this action from opening its doors for months. To protect the health and safety of its employees, customers, and the surrounding community, and comply with applicable law, Gap was required to close this store and keep it closed. And like innumerable other companies, it was required to make the difficult decision to furlough this store's employees—and tens of thousands more for closed stores across the country—to preserve its finances while revenue from the stores dropped to zero overnight. Even now, as government restrictions begin to ease for some activities and types of businesses but not others, the disease remains virulent, and extensive guidelines are required to be followed that may provide some measure of protection, but will radically change the shopping experience for a long time to come. Indeed, shopping for apparel in physical stores will look nothing like what was contemplated by the lease when it was executed. In a world of unforeseeable events, the circumstances the store has faced are at the extreme end of unforeseeability.

2.       These circumstances not only impose a severe and irreparable hardship on Gap, they frustrated the express purpose of the Lease and made the principal object of the Lease

illegal, impossible, and impracticable, all for a period of time that remains unknown and unknowable. Thus, the Lease and applicable law nullify any obligation to pay rent from mid-March through the present, entitle Gap to a refund of the rent and expenses it paid in advance for March 2020, and require that the Lease be rescinded and terminated or, at a minimum, modified as a matter of law.

3.      Gap seeks a determination of its rights and obligations under the Lease, including a determination that the Lease has been terminated or that Gap has a right to terminate it, that Gap owes no additional money to the Landlord, that Landlord owes money to Gap, that Gap is entitled to rescission and/or reformation of the Lease, and that Gap is entitled to attorney's fees and expenses incurred in connection with this action.

## PARTIES

4.      Tenant is a Delaware corporation with its principal place of business in San Francisco, California.

5.      Landlord is a New York limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000 and is between citizens of different states.

7.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the Premises are within this District.

## FACTS

8.      Landlord is the landlord under a commercial retail lease entered into between Tenant and Landlord's predecessor-in-interest on or about February 25, 1991 (as subsequently

amended, the "Lease"), for commercial retail space (the "Premises") in a building located at

1212 Avenue of the Americas, New York, New York (the "Building").

       9.     The parties' mutual purpose in entering the Lease was to provide Tenant with

commercial retail space suitable for the operation of a retail store selling apparel.

      10.    For example, Article 2 of the Lease states:  "Tenant shall use and occupy demised

premises as set forth in Article 38 hereof."

      11.    In turn, Article 38 of the Lease states in relevant part:

> For the first three (3) years of the term, Tenant shall use and occupy the Demised Premises solely for the retail sale of a variety of women's and men's clothing … and/or for retail sale of merchandise being sold in Tenant's stores under the names Banana Republic, GapKids, GapSport and Baby Gap, and for no other purpose. … After the expiration of the first three (3) years of the term, the demised premise may also be used for any of the uses listed on Exhibit C hereto ("Permitted Uses").

      12.    Exhibit C of the Lease states, in relevant part, that "'Other Permitted Uses'" as

defined in Article 38 shall be limited to the retail uses … listed below, or any combination of the

same, and for no other purpose, provided that such uses are … otherwise permitted by law."

      13.    Similarly, Article 51 of the Lease describes "the particular nature of Tenant use"

as "'apparel sales' as distinguished from 'general retail'".

      14.    But for the ability to operate a retail store at the Premises, Tenant would not have

entered the Lease, and Tenant's ability to operate a retail store at the Premises was the sole

consideration Tenant received in exchange for entering the Lease, all other nominal benefits of

the Lease being a part of, and subordinate and ancillary to, that consideration.

      15.    From the inception of the Lease until March 2020, Tenant maintained and

operated a retail apparel store at the Premises pursuant to the Lease.

      16.    On March 7, 2020, the Governor of New York issued Executive Order 202

declaring a disaster in the State of New York.

17.     On March 12, 2020, the Governor issued Executive Order 202.1, requiring any place of business to operate at no greater than fifty percent occupancy.

18.     Also on March 12, 2020, the Mayor of New York City issued Emergency Executive Order No. 98, declaring a disaster in the City of New York.

19.     On March 16, 2020, the Mayor issued Emergency Executive Order No. 100 imposing restrictions on various types of retail operations.

20.     On March 18, 2020, the Governor issued Executive Order 202.6, requiring non-essential businesses to reduce their in-person work force by 50%.  Tenant's store at the Premises is non-essential under this order.

21.     On March 20, 2020, the Governor of New York issued Executive Order 202.8, requiring non-essential businesses to reduce their in-person work force by 100% no later than March 22, 2020 at 8:00 p.m. Tenant's store at the Premises is non-essential under this order.

22.     Also on March 20, 2020, the Mayor issued Emergency Executive Order No. 102, further restricting retail operations in the City.

23.     Following the outbreak of COVID-19 in the United States, Tenant was forced to suspend all retail operations at the Premises to comply with applicable governmental orders and guidelines and to protect the health and safety of its employees, customers, and the surrounding community.

24.     As a result of the foregoing circumstances and orders, and other applicable governmental orders and guidelines, all of which were unforeseeable at the time the Lease was entered into, and which resulted from no act of either party, the parties' intended use of the Premises was frustrated, became impossible, illegal, and impracticable. Specifically, Tenant was forced to suspend all retail operations at the Premises. Tenant's purpose in entering the Lease

19

was frustrated. Tenant's performance under the Lease became impossible and impracticable. And Tenant was deprived of the consideration it received in exchange for entering the Lease.

25.     Indeed, although the Lease specifically contemplated that Tenant would benefit from its use for a fixed term, as a result of the unforeseeable COVID-19 crisis, Tenant has been deprived of its use of the Premises for the full term that Tenant was promised under the Lease. Such a result is inequitable and damages Tenant, in part because the term of the Lease, and the expectation that Tenant would be able to use it for its entire term, was the basis for the parties' negotiations and calculations at the time of contracting concerning Tenant's obligation to pay rent and other consideration under the Lease. Thus, for the additional fact and reason that the Premises were not usable for the entire term of the Lease, it is impossible and impracticable for the Landlord and Tenant to continue performing their obligations under the Lease, the parties' mutual purpose for entering the Lease has been frustrated, and the consideration Tenant was to receive under the Lease has failed.

26.     To date, Tenant has not been permitted to resume normal operations at the Premises. The date on which Tenant will be able to resume normal operations as contemplated by the Lease is unknown.

27.     The governmental orders depriving Landlord and Tenant of the right to use the Building, including the Premises, for retail operations constitute a governmental taking and condemnation of the Premises.  With respect to a condemnation, Article 10 of the Lease states in relevant part:

> If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.

28.     Therefore, under Article 10 of the Lease, the Lease has already terminated automatically pursuant to its own terms.

29.     In addition, the COVID-19 crisis and the civil orders affecting Tenant's ability to operate a retail store at the Premises constitute a casualty under Article 9 of the Lease that rendered the Premises wholly unusable, including for the uses defined as "Permitted Uses" and "Other Permitted Uses." Article 9(c) of the Lease states:

> If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionally paid up to the time of the casualty and thenceforth shall cease until 30 days after the date when the premises shall have been repaired and restored by Owner or when Tenant reopens for business, whichever shall first occur, subject to Owner's right to elect not to restore the same as hereinafter provided.

30.     Tenant has given the Landlord sufficient written notice of all the rights and remedies demanded in this counterclaim, including notice of the casualty under Article 9. Therefore, under the terms of Article 9(c), Tenant is not required to pay rent under the Lease while Tenant's use is interrupted, and, if for any reason the Court determines the Lease has not already terminated, Tenant is entitled to declaratory judgment confirming its right to terminate.

31.     Despite the protections granted Tenant under Article 9 and Article 10 of the Lease, as well as other applicable provisions of the Lease, Landlord has demanded that Tenant pay rent under the Lease for the period after Tenant was deprived of its use of the Premises, including, without limitation, a 14-day demand for payment or surrender of the Premises served on or about April 24, 2020. Landlord's demands constitute a breach of the terms and conditions stated in Article 9 and Article 10 and related provisions. Further, Landlord owes Tenant damages equal to the amount of rent and other expenses paid in advance for the month of March 2020 during which Tenant was deprived of the use of the Premises, as well as a credit for excess charges of rent and other expenses prior to the COVID-19 crisis.

**COUNT ONE**
**DECLARATORY RELIEF**
**(Termination of Lease)**

32.     Tenant repeats, realleges, and incorporates all prior paragraphs.

33.     Article 10 of the Lease states that the Lease will automatically terminate upon

condemnation of the Premises. In addition, Articles 9 and related provisions state that the Lease

will become terminable at Tenant's option in the event of a casualty.

34.     The civil orders issued by the Governor and Mayor in response to the COVID-19

crisis resulted in a taking and condemnation of the Building, including the Premises, and

rendered the Premises wholly unusable.

35.     Therefore, the Lease has already been terminated automatically under Article 10.

36.     Landlord contends that the Lease has not been terminated and an actual

controversy exists concerning the continued operation of the Lease.

37.     Tenant has no adequate remedy at law.

38.     Therefore, Tenant seeks a judgment declaring that the Lease has already

terminated automatically under Article 10 as a result of condemnation, or, in the alternative, that

Tenant has the right to terminate the Lease under Article 9 and related provisions.

**COUNT TWO**
**RESCISSION**
**(IN THE ALTERNATIVE)**
**(Rescission/Cancellation of Lease)**

39.     Tenant repeats, realleges, and incorporates all prior paragraphs.

40.     Tenant's ability to operate a retail store at the Premises was the parties' mutual

purpose in entering the Lease, as both parties understood at the time of contracting, and but for

its right to operate such a retail store, Tenant would not have entered the Lease. Indeed, without

22

Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

41.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, Tenant's obligations under the Lease became impossible and impracticable to perform, and Tenant was deprived of the consideration it received in exchange for entering the Lease.

42.     The sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was entered.

43.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law.

44.     In the alternative to Tenant's claim for declaratory relief regarding the termination of the Lease, Tenant is entitled to judicial rescission of the Lease, as a result of the frustration of purpose of the Lease, the illegality, impossibility and impracticability of Tenant's performance, and/or the failure of Tenant's consideration, effective on such date as the Court determines based on the evidence presented at trial.

## COUNT THREE
## BREACH OF CONTRACT

45.     Tenant repeats, realleges, and incorporates all prior paragraphs.

46.     Prior to the effective date of the Lease's termination and/or rescission, the Lease constituted a binding enforceable contract.

47.     Landlord breached the contract by, among other things: demanding Tenant pay rent and other expenses that were not owed under the Lease; demanding, collecting and subsequently failing to reimburse Tenant for excess charges paid in advance under the Lease before the COVID-19 crisis; and later failing to reimburse Tenant for the prorated amount of the

rent, charges and other expenses attributable to the period that Tenant has been deprived of its use of the Premises.

48.     Tenant performed all of its obligations under the Lease except those that were waived, excused or rendered impossible and/or impractical.

49.     Tenant is entitled to a judgment against Landlord in an amount to be proven at trial.

## COUNT FOUR
## DECLARATORY RELIEF
### (No Rent Owed)

50.     Tenant repeats, realleges, and incorporates all prior paragraphs.

51.     Tenant's ability to operate a retail store at the Premises was the express purpose of the Lease.

52.     Article 9(c) of the Lease states that Tenant shall not be liable to Landlord for the payment of rent and other expenses under the Lease following a casualty that renders the Premises wholly unusable.

53.     The COVID-19 crisis and various civil orders deprived Tenant of the lawful use of the Premises and rendered the Premises wholly unusable.

54.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law.

55.     Therefore, Tenant seeks a judgment declaring that Tenant had no further obligation to pay rent or other charges under the Lease beginning on the date that Tenant was forced to suspend retail operations and at all times thereafter.

**COUNT FIVE**
**(IN THE ALTERNATIVE)**
**REFORMATION OF LEASE**

56.     Tenant repeats, realleges, and incorporates all prior paragraphs.

57.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

58.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, Tenant's obligations under the Lease became impossible and impracticable to perform, and Tenant was deprived of the consideration it received in exchange for entering the Lease.

59.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was entered.

60.     The Parties would not have entered the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to use the Premises as a retail apparel store was the sole consideration Tenant received under the Lease.

61.     It was the Parties' true intent that Tenant would not pay rent or other consideration for the Premises if such use was rendered impossible or impractical.  Had the Parties been able to anticipate the events of the COVID-19 crisis at the time of contracting, the Parties would have provided language stating their true intent expressly.

62.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law.

25

63.     In the alternative to Tenant's claims related to the termination or rescission of the Lease, Tenant is entitled to judicial reformation of the Lease to reflect the Parties' true intent that Tenant would have no obligation to pay rent once it was deprived of the use of the Premises and that the Lease would terminate automatically when Tenant was deprived of its use of the Premises as originally contemplated by the Lease.

**COUNT SIX**
**MONEY HAD AND RECEIVED**

64.     Tenant repeats, realleges, and incorporates all prior paragraphs.

65.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

66.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, Tenant's obligations under the Lease became impossible and impracticable to perform, and Tenant was deprived of the consideration it received in exchange for entering the Lease.

67.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was entered.

68.     The Parties would not have entered the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to use the Premises as a retail store was the sole consideration it received under the Lease.

69.     Tenant has previously paid rent and other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises.

70.     The Landlord benefited from these payments to Tenant's detriment.

71.     Under principles of good conscience Landlord should not be allowed to retain the rent and other consideration paid for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

72.     Tenant is entitled to a judgment in its favor equal to the sums that Tenant has previously overpaid as rent and as other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

**COUNT SEVEN**
**UNJUST ENRICHMENT**

73.     Tenant repeats, realleges, and incorporates all prior paragraphs.

74.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

75.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, Tenant's obligations under the Lease became impossible and impracticable to perform, and Tenant was deprived of the consideration it received in exchange for entering the Lease. As a result, the Lease terminated and became void.

76.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was entered.

77.     The Parties would not have entered the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to use the Premises as a retail store was the sole consideration it received under the Lease.

78.     Tenant has previously paid rent and other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises.

79.     The Landlord was enriched as a result of these payments at Tenant's expense.

80.     Under principles of good conscience Landlord should not be allowed to retain the rent and other consideration paid for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

81.     Tenant is entitled to restitution of the sums that Tenant has previously overpaid as rent and as other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

## **PRAYER FOR RELIEF**

WHEREFORE, Tenant respectfully requests that this Court enter judgment:

a.     Declaring that the Lease has already terminated, or, in the alternative, that Tenant has the right to terminate the Lease;

b.     In the alternative to Paragraph a, granting judicial rescission of the Lease;

c.     Awarding Tenant monetary damages for Landlord's breaches of the Lease;

28

d.      Declaring that Tenant is not liable for rent or other charges under the Lease while its use of the Premises is and has been impaired;

e.      In the alternative to Paragraphs a and b, granting judicial reformation of the Lease;

f.      Ordering Landlord to reimburse Tenant for the payment of rent and other expenses paid for the period that Tenant was deprived of its use of the Premises as originally contemplated by the Lease;

g.      Ordering that Landlord take nothing by way of its Complaint;

h.      Awarding Tenant its attorney's fees, expenses, and other costs in this action; and

i.      Such other and further relief that this Court may deem just and proper.

## JURY TRIAL DEMAND

Tenant respectfully demands a trial by jury.

Dated: May 27, 2020                    **ROBINS KAPLAN LLP**

                                        By: */s/ Lisa M. Coyle*
                                            Lisa M. Coyle
                                            Robins Kaplan LLP
                                            399 Park Avenue, Suite 3600
                                            New York, NY 10022
                                            212-980-7400

                                            Michael A. Geibelson (*pro hac vice* pending)
                                            Daniel Allender (*pro hac vice* pending)
                                            Robins Kaplan LLP
                                            2049 Century Park East Ste. 3400
                                            Los Angeles, CA 90067
                                            310-550-0130

                                            *Attorneys for The Gap, Inc.*