

# KLEIN LAW GROUP CRE, PLLC

275 MADISON AVENUE, 33RD FLOOR, NEW YORK, NY 10016
2026 OCEAN AVE, SUITE 1B, BROOKLYN, NY 11230
TEL 212-661-9400   FAX 212-661-6606   WWW.KLEINLAWGROUPNY.COM

EDWARD E. KLEIN

WALTER LEVI
*also admitted in NJ*

EFREM Z. FISCHER
*also admitted in NJ*

*Of Counsel*
MARTIN H. GELBER

STACY F. SPERKA

August 3, 2020

<u>Via ECF</u>
Honorable Paul G. Gardephe
United States District Judge, Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

      **Re:**     **48th Americas, LLC v. The Gap, Inc. (Docket No. 20-03471 (PGG) (SN))**

Dear Judge Gardephe:

      We represent Plaintiff, 48th Americas, LLC ("Plaintiff"), in the above referenced action. We write pursuant to Rule IV(A) of Your Honor's Individual Rules of Practice to respectfully request a pre-motion conference seeking leave to file a motion for summary judgment. The basis for Plaintiff's proposed motion for summary judgment is that pursuant to Rule 56 of the Federal Rules of Civil Procedure, there is no genuine issue as to any material fact and Plaintiff is entitled to a judgment as a matter of law, on its claims for relief contained in its Amended Complaint dated May 26, 2020 (the "Complaint"), that Defendant, The Gap, Inc. ("Defendant") breached the terms of its Lease (as defined herein) with Plaintiff and must pay Plaintiff for the attorneys' fees incurred for enforcing the terms of the Lease, and that Defendant's counterclaims and affirmative defenses should be dismissed. The proposed motion is not on consent of Defendant.

      Plaintiff's Complaint alleges two claims for relief sounding in breach of contract and attorneys' fees. Specifically, on or about February 25, 1991, Defendant entered into a written commercial lease (as further amended, the "Lease"), pursuant to which, Defendant was demised portions of the ground floor, basement, and entire second floor in the building located at and known as 1212 Avenue of the Americas, New York, New York (collectively the "Premises"), to operate a retail store. On two separate occasions, September 22, 2004 and May 18, 2015, the parties negotiated and agreed to extend and modify the terms of the Lease. The Lease provides, *inter alia*, that, for the relevant period at issue in this action, the Fixed Rent is $3,170,280.30 per year, or $264,190.03 per month, and that Defendant is responsible for items of Additional Rent such as real estate taxes, water and snow removal charges. Finally, the parties agreed that Defendant is liable for Plaintiff's legal fees incurred in enforcing its rights under the Lease.

There is no genuine issue of material fact that, beginning April, 2020, Defendant breached the terms of the Lease by failing to pay Plaintiff the Fixed Rent due each month as well as other items of Additional Rent.  Presently, there is now due Plaintiff the sum of $1,320,949.72 in Fixed Rent and $125,923.79 in Additional Rent for a total amount due of $1,446,873.51.  Further, Plaintiff has incurred significant legal expenses in enforcing the terms of the Lease.  Defendant does not dispute the existence of the Lease, or that it failed to pay these sums.  Instead, it relies on a panoply of boiler plate affirmative defenses and baseless counterclaims to avoid its obligation to pay.  As set forth below, each of these defenses/counterclaims are wholly without merit, and are merely an attempt by Defendant to exploit the COVID-19 Pandemic to escape its liability under the Lease.

Plaintiff's first claim for relief sounds in breach of contract.  The elements of a breach of contract claim under New York law[1] are as follows: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004). Plaintiff's motion for summary judgment should be granted because there is no issue of material fact as to the existence of an agreement (*i.e.*, the Lease), that Plaintiff performed its obligations under the Lease by demising the Premises to Defendant, that Defendant breached the terms of the Lease by failing to pay the amount due and owing under the Lease, that Plaintiff has been damaged, and is entitled to recover the unpaid amounts due under the Lease.

Likewise, summary judgment in Plaintiff's favor on its second claim for relief sounding in attorneys' fees should also be granted. Under New York law, a provision in a lease requiring a tenant to pay its landlord for the legal fees and disbursements incurred in an action to enforce the payment of rent has long been judicially recognized. *379 Madison Avenue, Inc. v. Stuyvesant Co.*, 242 A.D. 567, 275 N.Y.S. 953, *aff'd*, 268 N.Y. 576 (1935).  Pursuant to Article 19 of the Lease, the parties agreed that Defendant is liable to Plaintiff for all attorneys' fees and expenses incurred in connection with the prosecution of this action. Here, there can be no genuine issue of material fact that Plaintiff incurred fees and expenses on account of Defendant's failure to pay the Fixed Rent and Additional Rent due and owing under the Lease. Therefore, summary judgment should also be granted on Plaintiff's second claim for relief.

By way of its Answer with Counterclaims, Defendant alleges twenty-one affirmative defenses and seven counterclaims. Importantly, because Defendant cannot meet its burden of proving its counterclaims and affirmative defenses, and the Lease refutes many of Defendant's allegations, the Court should grant summary judgment in its entirety. *See Leopold v. Baccarat, Inc.*,  239 F.3d 243, 245 (2nd Cir 2001).  For example, Plaintiff's First and Fourth Counterclaims, and Fifth and Sixth Affirmative Defenses allege that, based upon Lease Article 9, Casualty, and Lease Article 10, Eminent Domain, the Lease has been terminated and/or no rent is owed. Regarding Eminent Domain, the undisputed material facts will show that, in the present COVID-19 emergency, while government orders may have prevented Defendant from running its business as usual, they did not prevent it from otherwise occupying the Premises. Further,  the government never

---

[1] New York law applies for a determination of the issues based upon the parties' agreement in Lease. *See GATX Corp. v. Aero Jet Corporate*, No. 13 Civ. 4400, 2014 U.S. Dist. LEXIS 99924, at *8 & ft. nt. 2 (S.D.N.Y. July 22, 2014)

2

took possession of the Premises, and is not using the Premises. Indeed, contrary to its contentions, Defendant was permitted by the Lease, and continued, to use the Premises for "storage of stock" and "office purposes." Moreover, the order to close because of COVID-19 was intended to stop the spread of the pandemic, and clearly is an exercise of the state and city police power, which does not meet the definition of eminent domain. *See e.g., New York State Thruway Auth. v. Ashley Motor Ct.*, 10 N.Y.2d 151, 158, 218 N.Y.S.2d 640, 644 (1961). Regarding Casualty, no New York court has ever interpreted the Lease's standard casualty clause to include the presence of an epidemic. Rather, such clauses refer to physical damage which renders the subject premises unusable, and the COVID-19 pandemic does not constitute a casualty in this context, given the absence of physical damages to the Premises.  As such, these contentions fail as a matter of law.

Defendant's Second Counterclaim and Third Affirmative Defense for Rescission, Tenth Affirmative Defense of Frustration of Purpose, Twelfth Affirmative Defense of Impossibility, as well as the Fifth Counterclaim and Fourth Affirmative Defense for Reformation appear to allege that the Lease should be rescinded and/or reformed based upon the doctrines of impossibility of performance and frustration of purpose. Under the doctrine of frustration of purpose, a party to a contract may rescind the contract only if "an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract." *Burke v. Steinmann*, No. 03 Civ. 1390, 2004 U.S. Dist. LEXIS 8930, at *29 (S.D.N.Y. May 18, 2004). Regarding impossibility, the Second Circuit has explained that "[i]mpossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract." *United States v. General Douglas MacArthur Senior Village, Inc.*, 508 F.2d 377, 381 (2d Cir. 1974). Here, the facts fall far short of the high standards required to rescind or reform the lease.  First, this is not a first-time virus or pandemic and these events could have been foreseeable and negotiated for through the Lease.  Furthermore, under Article 38(A) of the Lease, Defendant were permitted to, and continued to, use the Premises for "storage of the stock for the demised premises and/or for office purposes," in connection with Defendant's services at the Premises. Indeed, the undisputed evidence, including photographs, demonstrates that during the various government shelter-in-place orders, Defendant's employees entered and exited the Premises with items. Further, on July 6, 2020, the date of the New York City "Phase 3" reopening, Defendant could have commenced full use of the Premises, but chose not to open. In any event, nothing can suggest that it was impossible for Defendant to perform its obligations under the Lease, which is to pay the rent.  As such, these claims should be dismissed on summary judgment.

Equally unavailing are Defendant's Third Counterclaim and Seventeenth Affirmative Defense  for Breach of Contract, and its Sixteenth Affirmative Defense of Lack of Damages. Defendant seems to be alleging that Plaintiff did not suffer damages, and breached the Lease by demanding monies not paid and failing to reimburse other sums. As set forth herein, Plaintiff's motion will demonstrate, *inter alia*, that Defendant's purported justifications for avoiding the payment of rent lack merit. As such, these counterclaims and affirmative defenses should be dismissed.

Next, Defendant's Sixth Counterclaim for Money Had And Received and Seventh Counterclaim for Unjust Enrichment should also be dismissed. First, it is well settled that such quasi-contractual claims should be dismissed where, as here, an express contract (the Lease) covers the subject matter of the quasi-contractual claims. *See Beth Israel Med. Ctr. v. Horizon Blue Cross*

*& Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  In any event, as detailed above, there exists no material issue of fact that Plaintiff never benefited from what is allegedly rightfully Defendant's such that equity and good conscience demand restoration of the property to Defendant. *See id.; Banque Worms v. BankAmerica Int.*, 77 N.Y.2d 362, 367, 568 N.Y.S.2d 541, 544 (1991). Accordingly, the Seventh and Sixth Counterclaims should be dismissed.

The Second Affirmative Defense, Failure to Mitigate, should be dismissed. Under New York law, a commercial landlord has absolutely no duty to mitigate its damages by re-renting leased premises upon a tenant's breach of a lease. *Holy Properties, Ltd. L.P. v. Kenneth Cole Productions, Inc.*, 87 N.Y.2d 130, 134, 637 N.Y.S.2d 964 (1995). Accordingly, the Second Affirmative Defense must be dismissed as a matter of law. Similarly, the Fourteenth Affirmative Defense, Commercial Impracticability, is not cognizable under New York law. *See Walden Fed. S&L Ass'n v. Slane Co.*, No. 09 Civ. 1042, 2011 U.S. Dist. LEXIS 37010, at *3 (S.D.N.Y. Apr. 5, 2011) ("New York courts do not recognize the defense of temporary commercial impracticability."). In fact, there is no material issue of fact that Defendant's refusal to meet its payment obligations was planned before COVID-19, over one year ago, when it designated the Premises as one of 220 stores that it was seeking to close because of commercial reasons. Thus, the Fourteenth Affirmative Defense should be dismissed. Further, the Eighteenth Affirmative Defense, Unclean Hands, must be dismissed as matter of law. First, "[t]he doctrine of unclean hands is an equitable defense that is unavailable in an action exclusively for damages." *Manshion Joho Center Co., Ltd. v. Manshion Joho Center, Inc.*, 24 A.D.3d 189, 190, 806 N.Y.S.2d 480, 482 (1st Dep't 2005).  In any event, there is no material issue of fact that Plaintiff never committed "some unconscionable act that is directly related to the subject matter in litigation and has injured [Defendant.]." *PenneCom, B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004). On the contrary, Plaintiff simply demanded payment of the rent due under the Lease. As such, this affirmative defense must also be dismissed.

The Ninth Affirmative Defense alleging that Plaintiff is somehow estopped from enforcing its claims under the Lease should also be dismissed. Under New York law, "[t]he elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position." *Mindspirit, LLC v. Evalueserve Ltd.* No. 15 Civ. 6065, 2020 U.S. Dist. LEXIS 117986, at *21 (S.D.N.Y.  July 4, 2020).  Here, there are no material facts that Defendant ever "changed its position" in reliance on any action or statement of Plaintiff, and, thus, this affirmative defense should be dismissed as well. Likewise, the Eleventh Affirmative Defense, Failure of Consideration, should also be dismissed. It is well settled that courts do not look to the adequacy of consideration provided that there was consideration, "absent fraud or unconscionability." *Apfel v Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 476, 600 N.Y.S.2d 433, 435 (1993). Here, consideration for Defendant' payment of rent was its use of the Premises, and there was no fraud or unconscionability. The Thirteenth Affirmative Defense, Illegality, should similarly be dismissed. To succeed on this defense, Defendant bears the burden of demonstrating that the obligation sued upon is usurious, ultra vires or otherwise illegal. *See Jones v Bluestone*, 10 N.Y.2d 940, 224 N.Y.S. 20 (1960). Here, Plaintiff's claim seeks the collection of unpaid rent; and there is nothing illegal about paying rent. Accordingly, this affirmative defense must also be dismissed.

The Nineteenth Affirmative Defense, Unconscionability, must also be dismissed. Under New York law, a determination of unconscionability requires a showing that the contract was both

procedurally and substantively unconscionable "**when made** -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 778, 780 (S.D.N.Y. 1990) (emphasis added). Here, there are no material issues of fact that there was nothing unconscionable at the time the Lease and its subsequent modifications were executed (or ever). Likewise, the Twenty-First Affirmative Defense, Failure of Condition Precedent, must be dismissed, because, there do not exist any conditions precedent in the Lease, or one that Defendant failed to comply with, for the commencement of the instant action. *See Cointech, Inc. v. Masaryk Towers Corp.*, 7 A.D.3d 376, 380-81, 777 N.Y.S.2d 76, 81-82 (1st Dept. 2004).

Defendant's Twentieth Affirmative Defense based upon mutual mistake and unilateral mistake, should be dismissed. A claim based on unilateral mistake cannot survive where, as here, the party merely alleges that it was mistaken, absent factual allegations that the other party acted fraudulently. *FSP, Inc. v. Societe Generale*, No. 02 Civ. 4786, 2005 U.S. Dist. LEXIS 3081, at \*\*47-48 (S.D.N.Y. February 28, 2015). Here, no material facts exist, not even an allegation, that Plaintiff acted fraudulently. Indeed, the Lease was executed and negotiated on three separate occasions by sophisticated parties, represented by counsel. To plead a claim for mutual mistake, the factual allegations must establish that both contracting parties shared the same erroneous belief as to a material fact, and their acts do not in fact accomplish their mutual intent. *Id.* Further, such a "mistake" by definition is not about a future contingency; it is a mistake about an existing fact at the time of the execution of the contract. *See id.; Simkin v. Blank*, 19 N.Y.3d 46, 545-55, 945 N.Y.S.2d 222, 227 (2013). Defendant's theory - - that the parties did not back then contemplate a global pandemic such as COVID-19 - - does not constitute a mistake of fact at the time of the contract, and thus, should be rejected by the Court.

Finally, Defendant's remaining affirmative defenses of Failure to State a Claim (First); Offset (Seventh); No Duty (Eighth); and Actions of Landlord and Third Parties (Fifteenth), should be dismissed. As detailed above, Plaintiff is entitled to summary judgment on its claims for relief, that Defendant has a duty to pay the rent, that its failure to pay the rent may not be excused by any actions of Plaintiff or third parties, and that Defendant is not entitled to any offset. Indeed, Articles 1 and 36(C) of the Lease provide that Defendant agreed to pay fixed rent and additional rent at the agreed upon rates, "without any abatement, deduction or setoff whatsoever." New York courts have interpreted provisions such as "without any abatement, deduction or setoff whatsoever" as an independent covenant, even where the tenant has a defense to rent payment or a claim against the landlord. *See Pacific Coast Silks, LLC v. 247 Realty, LLC*, 76 A.D.3d 167, 176, 904 N.Y.S.2d 407, 414 (1st Dep't 2010). Nothing excuses Defendant's obligation to pay its rent. In that regard, any delay in enforcing the Lease may prejudice Plaintiff given Defendant's public intentions to default on the terms of its various leases.

Accordingly, Plaintiff respectfully requests that the Court grant its request for a pre-motion conference concerning Defendants' proposed motion for summary judgment.

                                                  Respectfully submitted,
                                                  s/*Efrem Z. Fischer*_____
cc:    Lisa M. Coyle, Esq. (via ECF)    Efrem Z. Fischer (EZF-3860)