

399 PARK AVENUE  212 980 7400 TEL
SUITE 3600  212 980 7499 FAX
NEW YORK NY  10022-4690  ROBINSKAPLAN.COM

LISA M. COYLE
212 980 7468 TEL
LCOYLE@ROBINSKAPLAN.COM

August 6, 2020                                               *Via ECF*

Honorable Paul G. Gardephe
U.S. District Court Judge, Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

    Re: *48th Americas, LLC v. The Gap, Inc., Case No. 20-03471*

Dear Judge Gardephe:

    We represent defendant/counter-claimant The Gap, Inc. ("Tenant") in the above-referenced action by plaintiff/counter-defendant 48th Americas, LLC ("Landlord"). We respectfully respond to Landlord's August 3, 2020 letter requesting a pre-motion conference seeking leave to file a summary judgment motion. Landlord's letter, presented without any attempt to meet and confer, is premature, filled with self-serving and unproven statements and fails to establish any of the claims are ripe for summary adjudication. No discovery has been conducted. Indeed, there has not even been an initial pre-trial conference. Even without that, and merely on the face of the pleadings, numerous questions of fact necessitate discovery and require denial of Landlord's request. The action is also subject to a pending MDL Petition seeking consolidation of dozens of similar actions; a motion to stay pending the JPML's decision will be filed imminently.

    This action involves a commercial lease that had a single purpose: the operation of a retail clothing store at 1212 Avenue of the Americas (the "Premises"). *As consideration for this use*, Tenant agreed to pay Landlord monthly rent which, if the current circumstances did not exist and rent was required to be paid in full, would be approximately $264,000 per month. The current circumstances, however, have profoundly frustrated the purpose of the lease. While Landlord and Tenant are sophisticated parties who accounted for and allocated risks associated with some circumstances that may have arisen during the term of the lease, no one could have or did anticipate the possibility or effects of a global pandemic that would, among other things, (i) infect over 4.7 Million and kill over 156,000 Americans (so far),[1] and (ii) necessitate protracted orders requiring individuals to shelter in place and all non-essential businesses to suspend operations. However, the COVID-19 pandemic, unmatched in scope and unprecedented in duration, resulted in government mandates that changed the face of New York City, if not forever then for the foreseeable future. Following Governor Cuomo's order that all non-essential businesses shut down in mid-March 2020, New York City became a ghost town overnight as stores, restaurants, gyms, schools and offices were shuttered. The order required the complete closure of Tenant's retail location for nearly three months, and to this day, requires it to operate in a manner drastically different from

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

what was contemplated when the lease was negotiated. Numerous retailers have reported their stores in New York City continue to suffer more than other locations after reopening.[2] The value of leases there has been decimated.

Landlord glosses over these events and argues that there is no genuine issue of fact that Tenant failed to pay rent and so summary judgment in Landlord's favor on its breach of contract claim is appropriate. This grossly oversimplifies the issues presented in this case. Tenant did not "fail to pay" rent. Tenant disputes that rent was *due* under the lease in light of the extraordinary and unaccounted for circumstances created by the pandemic. And a finding that rent was due at this stage of the litigation assumes the parties' purpose in entering the lease has been fulfilled (it has not) and that they could have foreseen the scope of a pandemic like COVID-19 (they could not). The Court, however, cannot make those assumptions on absolutely no factual record. Questions of fact exist regarding, among other things, the parties' reasonable expectations as well as what they did and could have reasonably foreseen at the time they entered into the lease. These issues need to be explored in discovery. Landlord also argues that it is entitled to attorneys' fees under Article 19 of the lease. Article 19 provides for attorneys' fees in the event of Tenant's default. A default, however, has not been established and, for the reasons set forth herein, cannot be established by way of a premature motion for summary judgment.

*Tenant's Claims and Defenses for Declaratory Relief/Termination of Lease*

Landlord's request for permission to summarily adjudicate each of Tenant's Counterclaims and Affirmative Defenses must also be rejected. Landlord first attacks Tenant's Counterclaims for Declaratory Relief seeking a judgment that the lease has been terminated under Article 10 (eminent domain), that the lease may be terminated under Article 9 (casualty), or that Tenant had no further obligation to pay rent or other charges, as well as Tenant's Affirmative Defenses invoking Articles 9 and 10 of the lease. In support, Landlord argues that "the undisputed material facts will show that . . . while government orders may have prevented Tenant from running its business as usual, they did not prevent it from otherwise occupying the Premises." As an initial matter, Landlord's assertion that the underlying facts "*will* show" certain things is a concession that *no* facts – undisputed or otherwise – are in evidence because no discovery has yet occurred. Moreover, Landlord's concession that Tenant was "prevented . . . from running its business as usual," *supports Tenant's position* that the purpose of the lease was to operate a retail store and that that purpose was frustrated. Further, what Landlord claims are the "undisputed material facts" are that Tenant was permitted to use the premises for the "storage of stock" and "office purposes." These "facts" are actually disputed and misleading. The lease provides that Tenant may use the Premises for "the storage of the stock *for the demised premises* and/or for office purposes *solely serving Tenant's operation at the demised premises, all in connection with the operation of Tenant's business in the demised premises, and/or for retail sale of merchandise being sold in Tenant's stores . . . and for no other purpose*." (emphasis added). Before the pandemic, Tenant operated a retail store at the Premises; the lease simply granted ancillary permission to store sales inventory or do office work

---

[2] The New York Post reports that "NYC is now the worst place to do business" for retailers. *See* https://nypost.com/2020/07/21/nyc-is-now-the-worst-place-to-do-business-retailers-say/?utm_campaign=iphone_nyp&utm_source=mail_app

in connection with retail sales. Discovery will reveal that neither party intended the Premises to principally be used as a business office or storage facility. Even if Landlord contends otherwise, this raises a question of fact requiring discovery. *See Ames v. Cty. of Monroe*, 162 A.D.3d 1724, 1726 (1st Dept. 2018) ("[W]here 'contract language is reasonable susceptible of more than one interpretation, . . . extrinsic or parol evidence may be then permitted to determine the parties' intent as to the meaning of that language.'").

Landlord also cannot show, at this early stage, that the casualty and eminent domain clauses of the lease agreement do not apply. First, that no New York court has yet opined that a global pandemic or government order in response thereto falls within the scope of a casualty provision of a lease is irrelevant. No New York court has had the opportunity to rule on these issues because the massive economic shut down spurred by COVID-19 is unprecedented. Determination of these questions remains a fact-intensive inquiry dependent upon the specific uses of individual properties and language of leases. *See, e.g., Lathers v. Coates,* 18 Misc. 231, 232 (1st Dept 1896) ("Whether plaintiff's premises were made untenantable, destroyed in whole or in part, within the meaning of the Casualty Clause, is a question of fact"); *Reischmann v. L.N. Hartog Candy Co.,* 132 NYS 435, 437 (App Term 1911) (Although "the continued occupation by a tenant is some evidence of its fitness for rent or occupation ... it is not conclusive evidence on this point.") *N.N. Int'l (USA) Corp. v. Gladden Properties, LLC*, 52 Misc. 3d 1206(A) (N.Y. Sup. Ct. 2016) (denying summary judgment because a question of fact existed about whether plaintiff's alleged property damages fell within the scope of the casualty clause). Second, the government does not have to take physical possession of a building to effect a "taking." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). Instead, takings can occur "when the government acts in a regulatory capacity." *Id.* And, generally, government action may result in a taking even if it is a valid exercise of police power. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982).

*Tenant's Claims and Defenses for Rescission, Reformation, Frustration and Impossibility*

Landlord next argues that Tenant's Counterclaims for Rescission and Reformation and Affirmative Defenses for Rescission, Reformation, Frustration of Purpose and Impossibility may be summarily adjudicated because "this is not a first-time virus or pandemic and these events could have been foreseeable and negotiated for through the Lease." Those are disputed facts. The idea that Tenant could have negotiated, much less actually did negotiate, for contractual protection against the COVID-19 shutdown cannot be credited, and certainly not without any discovery into the issue. Nor is a "could have" sufficient to support summary judgment. Moreover, as set forth above, whether the pandemic and the unprecedented events surrounding it could have been foreseen are questions of fact that preclude a finding of summary judgment. Indeed, evidence that exists (but has not yet been exchanged through discovery) is contrary to Landlord's assertion, both with respect to this lease particularly and as a matter of industry custom and practice, both of which demonstrate the existence of a triable issue precluding summary judgment. Discovery will reveal that no commercial party could have foreseen anything remotely similar to what has occurred. At the very least, whether such protection could or should have been bargained for is a question of fact. *See M&M Transp. Co. v. Schuster Express, Inc.,* 13 B.R. 861, 869 (S.D.N.Y. 1981) ("The

basic test is whether the parties contracted on a basic assumption that a particular contingency would not occur. . . . An analysis of the facts is crucial for the proper application of this doctrine.").

Likewise, Landlord's argument that there can be no frustration of purpose because Tenant's employees were seen entering and exiting the premises during the shutdown begs the question what they were doing and why. It is undisputed that Tenant was not using the Premises as a retail clothing store. Thus, absent discovery, Landlord cannot simply conclude that employees – if in fact they did enter and/or exit the Premises– were using the Premises *as contemplated by the lease*. The store was closed to the public pursuant to a governmental order. The argument that Tenant could have used the Premises for storage or office space must be rejected as well. As explained above, the parties never intended that the Premises would be used for storage and office space. The fundamental purpose of the lease was to operate a retail store. That central purpose was frustrated and made impossible when Tenant could not open the store and thereafter could only operate at marginal capacity due to mandatory occupancy and operating restrictions, and a fundamental mistake about the retail environment throughout the term. New York courts have held frustration of purpose is applicable where a tenant cannot use leased premises for its contractual purpose. *See, e.g.*, *Jack Kelly Partners LLC v. Zegelstein*, 33 N.Y.S.3d 7, 11 (N.Y. App. Div. 2016); *Two Catherine St. Mgt. Co. v. Yam Keung Yeung*, 544 N.Y.S.2d 676 (N.Y. App. Div. 1989). There is also "ample authority holding that where performance becomes impossible because of action taken by government, performance is excused." *Metpath, Inc. v. Birmingham Fire Ins. Co.*, 86 A.D. 2d 407, 411-12 (1st Dep. 1982). Finally, Landlord's argument – that Tenant's only obligation was to pay rent and it was not impossible to pay rent – also misses the point. The central consideration for the lease – for Tenant to operate a retail store – was rendered impossible, illegal, and impracticable. The consideration for the Lease failed as a result of the orders and restrictions that were not foreseen by the parties.

*Tenant's Claims and Defenses for Breach of Contract and Lack of Damages*

Tenant's Counterclaim and Affirmative Defense for Breach of Contract and Affirmative Defense of Lack of Damages cannot be summarily adjudicated based on the vague assertion that "Defendant's purported justifications for avoiding the payment of rent lack merit." As set forth above, Landlord's claim that rent was due under the circumstances is based on a self-serving interpretation of the contract that Tenant is entitled to test through the discovery process and Landlord's assertion of the force majeure clause that does not apply to the circumstances presented.

*Tenant's Claims for Money Had and Received and Unjust Enrichment*

Tenant's Counterclaims for Money Had and Received and Unjust Enrichment seek to recover substantial rent and other sums that Tenant paid in advance for use of the Premises that were ultimately shuttered by government order. Landlord's claim that it received no benefit at Tenant's expense is a disputed issue of fact and will be the subject of discovery. The argument that equitable claims cannot be brought because the lease governs also is flawed. Tenant is entitled to plead in the alternative and, to the extent the lease was rescinded or terminated by operation of

law, these claims are not covered by the lease. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("Where rescission of a contract is warranted, a party may timely rescind and seek recovery on the theory of quasi contract.")

*Tenant's Remaining Affirmative Defenses*[3]

Finally, Landlord claims there is no evidence to support Tenant's remaining Affirmative Defenses or that they are barred as a matter of law. To claim there is no evidence while seeking to deny Tenant discovery is disingenuous. Numerous factual issues exist that preclude summary judgment and necessitate discovery, including, without limitation, whether Tenant was seeking to close the store – much less avoid paying rent – before COVID-19, as Landlord alleges; whether Landlord acted in a commercially reasonable manner or took steps to mitigate its damages notwithstanding its alleged right not to do so; whether Landlord is estopped from enforcing any of its alleged rights based on any representations it made to Tenant, *see Century Fed. Sav. & Loan Ass'n of Long Island v. Net Realty Holding Tr.*, 87 A.D.2d 858, 858, 449 N.Y.S.2d 293, 294 (1982) ("The issue of whether defendant should be equitably estopped from asserting the Statute of Limitations as an affirmative defense to plaintiff's complaint is . . . a question of fact, which should be fully developed and determined upon the trial of the action); whether the parties shared the same understanding of the intent of the lease and whether that intent was fulfilled, *see Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 46 (2d Cir. 1991); whether there was a failure of consideration;[4] and whether Landlord acted with unclean hands in its dealings with Tenant.

Landlord seeks a trial on the merits without any discovery – essentially a finding, as a matter of law, that COVID-19 and its aftermath were reasonably foreseeable, intended to be covered by the lease, and/or have no bearing on the parties' obligations. Under New York law, these and the other issues the pleadings raise involve questions of fact that cannot be resolved without discovery. No court has summarily denied a commercial tenant its day in court to seek relief from the COVID-19 disaster. "[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. . . .*The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment. . . .* Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (emphasis added) (internal citations omitted). *This is not such a case.*

---

[3] These include Tenant's First, Second, Ninth, Eleventh, Thirteenth, Fourteenth, Eighteenth, Nineteenth, Twentieth and Twenty-First Affirmative Defenses.

[4] Landlord confuses failure of consideration with lack of consideration. New York treats a failure of consideration similarly to frustration of purpose. *See, City of New York v. Long Island Airports Limousine Serv. Corp.*, 467 N.Y.S.2d 93, 95 (N.Y. App. Div. 1983). Landlord also misconstrues the defense of illegality. Tenant is not alleging it was illegal to pay rent; rather, it alleges that the purpose, object and performance of the lease became illegal (i.e., it was not permitted to operate a retail store). "It is well settled under New York law that a contract to perform illegal acts is void and unenforceable." *Hartman v. Harris*, 810 F. Supp. 82, 84 (S.D.N.Y. 1992), aff'd, 996 F.2d 301 (2d Cir. 1993).

Respectfully submitted,

*/s/ Lisa M. Coyle*

Lisa M. Coyle