UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

48TH AMERICAS LLC,

        Plaintiff/ Counterclaim Defendant

  -against-

THE GAP, INC.

        Defendant/ Counterclaimant.

Case No. 20-cv-3471 (PGG)

**THE GAP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PENDING DECISION BY MULTIDISTRICT LITIGATION PANEL TO ACCEPT TRANSFER OF FEDERAL COURT ACTIONS**

DAVIS & GILBERT LLP
Joshua H. Epstein (JE-2187)
Jesse B. Schneider (JS-4080)
1740 Broadway
New York, NY 10019
(212) 468-4800

*Counsel for Defendant/ Counterclaimant*
*The Gap, Inc.*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................1

II. BACKGROUND........................................................................................................................3

    A. Gap's Business..................................................................................................................3

    B. The Effects of the COVID-19 Pandemic .........................................................................3

    C. Gap's Corporate Decision and Resulting Litigation for Recovery of Unpaid Rent ............4

    D. Gap's Action and the Transfer Motion .................................................................................6

III. ARGUMENT ............................................................................................................................6

CONCLUSION................................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aikins v. Microsoft Corp.*,
  No. A. 00-0242, 2000 U.S. Dist. LEXIS 4371 (E.D. La. Mar. 24, 2000) ...............................7

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd.*,
  Civil Action No. CV-05-453(DGT), 2005 U.S. Dist. LEXIS 38214 (E.D.N.Y. Dec. 22, 2005) ........................................................................................................9, 10

*Clinton v. Jones*,
  520 U.S. 681 (1997) ...........................................................................................................7

*In re COVID-19 Gap Lease Payment Litigation*,
  MDL No. 2960, Dkt. 1 (J.P.M.L.) .....................................................................................2

*Felix v. City of N.Y.*,
  No. 16-CV-5845 (AJN), 2016 U.S. Dist. LEXIS 120000 (S.D.N.Y. Sep. 6, 2016) ..................7

*Good v. Altria Group, Inc.*,
  624 F. Supp. 2d 132 (D. Me. 2009) ..................................................................................7

*Johnson v. AMR Corp.*,
  Nos. 95 C 7659, 1996 U.S. Dist. LEXIS 4172 (N.D. Ill. Apr. 3, 1996) ..................................7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...........................................................................................................6

*Lee v. Equifax Info. Servs.*,
  No. 18-CV-3133 (RRM), 2018 U.S. Dist. LEXIS 234885 (E.D.N.Y. Aug. 6, 2018) ...............7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) .................................................................................................9

*Meyers v. Bayer AG*,
  143 F. Supp. 2d 1044 (E.D. Wis. 2001) .............................................................................7

*In re Nat'l Prescription Opiate Litig.*,
  290 F. Supp. 3d 1375 (J.P.M.L. 2017) ...............................................................................8

*Ritchie Capital Mgmt., LLC v. GE Capital Corp.*,
  87 F. Supp. 3d 463 (S.D.N.Y. 2015) ..................................................................................9

*Rivers v. Walt Disney Co.*,
  980 F. Supp. 1358 (C.D. Cal. 1997) ...............................................................................7, 9

*Rosenfeld v. Hartford Fire Ins. Co.*,
   No. 88-CV-2153, 1988 U.S. Dist. LEXIS 4068 (S.D.N.Y. May 12, 1988) ..............................8

*Royal Park Invs.SA/NV v. Bank of Am. Corp.*,
   941 F. Supp. 2d 367 (S.D.N.Y. 2013).......................................................................2, 7, 9, 10

*Specrite Design, LLC v. Elli N.Y. Design Corp.*,
   16 Civ. 6154 (ER), 2017 U.S. Dist. LEXIS 113416 (S.D.N.Y. July 20, 2017)...................7, 10

*Sullivan v. Cottrell, Inc.*,
   No. 11CV1076S, 2012 U.S. Dist. LEXIS 26434 (W.D.N.Y. Feb. 29, 2012) ..........................8

**Statutes**

28 U.S.C. § 1407................................................................................................................2, 7

**Other Authorities**

Centers for Disease Control and Prevention, "Cases in the U.S." (Aug. 10, 2020)
   https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html..........................4

*In re COVID-19 Gap Lease Payment Litigation*,
   Docket No. 1 (August 5, 2020) .................................................................................................6

Esther Fung, "Landlords' New Credo for Late-Paying Retail Tenants: I'll See
   You in Court," Wall Street Journal (June 9, 2020)
   https://www.wsj.com/articles/landlords-new-credo-for-late-paying-retail-
   tenants-ill-see-you-in-court-11591704000 ............................................................................10

John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev.
   2225, 2242 n.88 (2007-08)........................................................................................................6

Manual Complex Lit. § 22.35 (4th ed.) ........................................................................................7

Neil Irwin, "Don't Lose the Thread. The Economy Is Experiencing an Epic
   Collapse of Demand." The New York Times (June 7, 2020)
   https://www.nytimes.com/2020/06/06/upshot/coronavirus-economic-
   crisis.html?searchResultPosition= ............................................................................................4

## I.     PRELIMINARY STATEMENT

Beginning in May 2020, landlords filed substantively similar complaints against The Gap, Inc. and its subsidiaries, Old Navy, LLC, Banana Republic, LLC, and Athleta, LLC (collectively, "Gap"), in state and federal courts throughout the United States for the nonpayment of rent.[1]  Each of these cases challenges Gap's determination, made at its corporate headquarters in San Francisco, California in March 2020, that the purpose and object of various leases had become frustrated, impossible, illegal and commercially impracticable by the disruption arising out of the COVID-19 pandemic and government-mandated closures.[2]  Faced with unprecedented health and safety challenges posed by the COVID-19 pandemic, mandatory store closures caused by government mandates, and a radical, long-term change in the retail operating environment, Gap's leadership decided to suspend rent payments on virtually all its retail leases throughout the United States.[3]  And like innumerable other companies, Gap was required to make the difficult decision to furlough this store's employees—and tens of thousands more for closed stores across the country—to preserve its finances while revenue from the stores dropped to zero overnight.[4]

Even now, as government restrictions begin to ease for some activities and types of businesses but not others, the disease remains virulent, and extensive guidelines are required to be followed that may provide some measure of protection, but will radically change the shopping experience for a long time to come.  Indeed, shopping for apparel in physical stores will look nothing like what was contemplated by the leases when they were executed.  In a world of unforeseeable events, the circumstances the store has faced are at the extreme end of unforeseeability.  Accordingly, in all of these various cases in multiple jurisdictions, Gap seeks a

---

[1] Affidavit of Jennifer Rondholz ("Rondholz Aff.") at ¶ 2.
[2] *Id.*
[3] *Id.* ¶ 3.
[4] *Id.* ¶ 4.

1

determination of its rights and obligations under its leases, including a determination that Gap owes no additional money to the landlords, that, in many of these cases, landlord owes money to Gap, that Gap is entitled to rescission of the leases, or alternatively, that Gap is entitled to reformation of the leases.

The current allegations proffered in this action by 48th Americas LLC ("48th Americas") for the nonpayment of rent are no different.  Due to the multiple, overlapping common questions of fact, as well as because centralization would further the convenience of parties and witnesses while promoting judicial economy, Gap filed a motion to transfer this and 32 substantively similar actions pending against Gap in federal district courts (the "Actions") for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 (the "Transfer Motion") on August 5, 2020. *In re COVID-19 Gap Lease Payment Litigation*, MDL No. 2960, Dkt. 1 (J.P.M.L.).  The instant action filed by Gap is one of the Actions Gap seeks to centralize.  Thus, concurrently with these proceedings before the Court, the Judicial Panel on Multidistrict Litigation (the "Panel") is deciding whether to transfer this and the other substantially-similar Actions involving common factual questions to a multidistrict litigation proceeding.

Under the circumstances, a stay of these proceedings until the Panel makes a final decision on the pending Transfer Motion is appropriate because a stay will not prejudice 48th Americas and its prosecution of this case; will spare Gap the risk of inconsistent pre-trial rulings; will conserve judicial resources; will not negatively impact third parties, and will promote the public interest.  *See Royal Park Invs.SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 372 (S.D.N.Y. 2013) (to determine whether to issue stay, courts should consider (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants;

(3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest).

For the foregoing reasons, and as will be shown in greater detail below, the Court should grant the Motion and stay these proceedings until the Panel issues its order.

## II.  BACKGROUND

### A.  Gap's Business

Gap and its subsidiaries—Old Navy, Banana Republic, and Athleta—are retailers of clothing and accessories, and operate thousands of brick-and-mortar stores in locations throughout the United States.[5] These stores are leased from landlords like 48th Americas, and monthly rental obligations range anywhere from about $12,000 per month to over a million dollars per month for each location.[6] Gap's rental obligations constitute one of the most significant expenses in each individual store's budget and one of Gap's largest operating expenses overall.[7]

### B.  The Effects of the COVID-19 Pandemic

From the moment it was unleashed upon American society and its economy in March 2020, the COVID-19 pandemic has presented unique and unprecedented circumstances that were unforeseeable—indeed, unimaginable—at the time Gap entered into the lease with 48th Americas.[8] The disease is virulent and highly contagious, and its spread has been rapid and

---

[5] Rondholz Aff. at ¶ 5.
[6] *Id.* ¶ 6.
[7] *Id.* ¶ 7.
[8] Ans. and Countercl. ¶ 1 (ECF No. 13); Rondholz Aff. at ¶ 8.

accelerating.[9] The government's reaction has been profound and prevented Gap from opening its doors for months.[10] This societal disruption and government-mandated closures shredded the fabric of the American economy, resulting in the most severe economic contraction since the Great Depression.[11] Even after these unprecedented measures, the virus continues to spread at an accelerated pace, with more than 5.5 million people in the United States having tested positive for the virus (with, at times, more than 75,000 new case each day), and more than 161,000 deaths (with, at times, more than 1,000 deaths each day).[12]

### C. GAP'S CORPORATE DECISION AND RESULTING LITIGATION FOR RECOVERY OF UNPAID RENT

To protect the health and safety of its employees, its customers, and the surrounding community, as well as in order to comply with applicable local and state laws, Gap was required to close virtually all of its U.S. stores in March and keep them closed.[13] Much like innumerable other companies navigating the effects of the COVID-19 pandemic, Gap made the difficult decision to shutter its on-premises retail operations and furlough tens of thousands of employees across the country.[14] This was done in order to preserve Gap's finances while revenue in March dropped to nearly zero overnight.[15]

Even now, as government restrictions have eased in some jurisdictions for some activities and types of businesses but not others, the disease remains virulent, and Gap and other brick-

---

[9] Ans. and Countercl. ¶ 1 (ECF No. 13); Rondholz Aff. at ¶ 9.
[10] *Id*.
[11] *See* Neil Irwin, "Don't Lose the Thread. The Economy Is Experiencing an Epic Collapse of Demand." The New York Times (June 7, 2020) https://www.nytimes.com/2020/06/06/upshot/coronavirus-economic-crisis.html?searchResultPosition=3.
[12] *See* Centers for Disease Control and Prevention, "Cases in the U.S." (Aug. 10, 2020) https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Rondholz Aff. ¶ at 10.
[13] Rondholz Aff. ¶ at 11.
[14] *Id*. ¶ 12.
[15] *Id*. ¶ 13; Ans. and Countercl. ¶ 1 (ECF No. 13).

and-mortar retailers are charting a brave new world of capacity restrictions, social distancing measures, and unprecedented customer and employee safety requirements, as well as a reluctance to return to retail stores.[16]  For stores that have been permitted to re-open, extensive safety guidelines must be followed to provide some measure of protection, but will radically change the shopping experience for a long time to come.[17]  Indeed, shopping for apparel in Gap's physical stores will look nothing like what was contemplated by their leases when they were executed.  These circumstances not only impose a severe and irreparable hardship on Gap, they also have frustrated the express purpose of the operative leases and made their principal object illegal, impossible, and impracticable, all for a period of time that remains unknown and unknowable.[18]

These unprecedented circumstances are not localized or limited to particular stores or even particular regions of the country.  They are widespread and cut across the entirety of Gap and its subsidiaries' retail operations. Thus, Gap's leadership in San Francisco made a determination that regardless of jurisdiction, the leases and applicable law nullified any obligation to pay rent from March through the present, entitling Gap to refund of any March rent payments, a declaration no further rent is owed, and the modification (reformation) or rescission of its leases.[19]

---

[16] Rondholz Aff. at ¶ 14.
[17] *Id.* at ¶ 15*;* Ans. and Countercl. ¶ 1 (ECF No. 13).
[18] Rondholz Aff. at ¶ 16.
[19] *Id.* ¶ 17.

### D. Gap's Action and the Transfer Motion

Gap originally filed this action on June 12, 2020. Like the other landlords asserting claims against Gap in the Actions, 48th Americas contends Gap's failure to pay rent constitutes a default and breach of the operative lease agreements.[20]

On August 4, 2020, Gap filed the Transfer Motion. *See In re COVID-19 Gap Lease Payment Litigation*, MDL No. 2960, Dkt. 1 (J.P.M.L.). The motion will be fully briefed by September 4, 2020 and is likely to be heard by the Panel at its next hearing on September 24, 2020 (or its December 3, 2020 hearing at the latest). Based on past practices, Gap expects the Panel to issue a ruling approximately two weeks after the hearing. *See* John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2242 n.88 (2007-08) (then-chair of the JPML: "Usually within two weeks of oral argument, the Chair has finalized and approved each written opinion pertaining to that session."). If the Transfer Motion is granted, the Actions would be centralized before a single district court for pretrial purposes.

## III. ARGUMENT

The Court should stay this case pending the Panel's decision on whether to centralize Gap lease dispute Actions for coordinated or consolidated pretrial proceedings. A stay would ensure that the parties do not needlessly expend resources litigating matters that could be obviated by the rulings on the Transfer Motion.

This Court has a well-established power to stay proceedings that is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248,

---

[20] Am. Compl. ¶¶ 23-29 (ECF No. 11).

254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In considering a motion to stay, courts consider "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Royal Park,* 941 F. Supp. 2d at 372.[21]

Furthermore, where a multi-district litigation proceeding has been established, courts have routinely stayed motions pending rulings by the JPML. *Id.*[22] After application of the above factors, and consistent with their inherent powers, courts almost invariably stay proceedings and defer consideration of pending motions where, as here, the action might be centralized for coordinated proceedings in an MDL. *See*, *e.g.*, *Royal Park*, 941 F. Supp. 2d at 370 ("[W]here a multi-district litigation proceeding has been established, courts have routinely stayed motions pending rulings by the JPML.").[23] The rationale is straightforward. If the Panel grants the

---

[21] *See also Specrite Design, LLC v. Elli N.Y. Design Corp.*, 16 Civ. 6154 (ER), 2017 U.S. Dist. LEXIS 113416, at *4 (S.D.N.Y. July 20, 2017); *Lee v. Equifax Info. Servs.*, No. 18-CV-3133 (RRM), 2018 U.S. Dist. LEXIS 234885, at *3 (E.D.N.Y. Aug. 6, 2018); *Felix v. City of N.Y.*, No. 16-CV-5845 (AJN), 2016 U.S. Dist. LEXIS 120000, at *6 (S.D.N.Y. Sep. 6, 2016).

[22] *See also Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1046-47 (E.D. Wis. 2001) (staying the question of whether there was federal question jurisdiction pending the results of proceedings before the JPML seeking to transfer the case to another district); *Aikins v. Microsoft Corp.*, No. A. 00-0242, 2000 U.S. Dist. LEXIS 4371, at *3 (E.D. La. Mar. 24, 2000) (declining to decide a motion to remand because "the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings [and] [t]his case presents questions of fact similar to the other actions pending before the JPML."); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) (stating that "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved."); *Johnson v. AMR Corp.*, Nos. 95 C 7659 to 95 C 7664, 1996 U.S. Dist. LEXIS 4172, at *3-4 (N.D. Ill. Apr. 3, 1996) (staying any ruling on a jurisdictional motion until the MDL Panel ruled on the issue of transfer and stating that "the benefits of transferring [the cases] to the MDL—the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources—are obvious.").

[23] *See also* Manual Complex Lit. § 22.35 (4th ed.) ("A stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well."); *Good v. Altria Group, Inc.*, 624 F. Supp. 2d 132, 136 (D. Me. 2009) ("to the extent the Court can predict the JPMDL's transfer decision, this action appears a good candidate for transfer and coordination or consolidation under § 1407, and therefore a good candidate for a brief stay

7

Transfer Motion, the assigned MDL judge can rule on any pending motions presenting the same issue, along with all other pretrial matters, thereby preserving judicial resources, ensuring consistent decisions, and avoiding the risk of inconsistent litigation. This case should be no exception.

*First*, 48th Americas cannot complain of prejudice in light of the relatively early procedural posture of this proceeding and the fact that the Panel's decision is likely to be issued shortly. *See Rosenfeld v. Hartford Fire Ins. Co.*, No. 88-CV-2153, 1988 U.S. Dist. LEXIS 4068 at *4 (S.D.N.Y. May 12, 1988) (staying the case pending a decision by the JPML because, "[w]hile [plaintiffs] may suffer some initial delay, once the cases are coordinated . . . more time may well be saved than was lost"). Here, the parties have not even exchanged initial disclosures, nor has the Court entertained a preliminary conference. Indeed, the preliminary conference is not scheduled until September, at or about the same time the Panel is set to decide on the Transfer Motion. Accordingly, there is no significant delay or prejudice to 48th Americas

*Second*, at the same time, Gap will suffer significant hardship absent a stay. As the Panel has held repeatedly, the central goal of the MDL is to consolidate actions in a single court to "substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017). Allowing this case to proceed on a separate track would frustrate these goals, forcing Gap to litigate the same issues in another, potentially unnecessary forum, and materially complicating efforts to coordinate and streamline discovery across dozens of substantively similar cases that other landlords across the country

---

pending a decision"); *Sullivan v. Cottrell, Inc.,* No. 11CV1076S, 2012 U.S. Dist. LEXIS 26434, at *10 (W.D.N.Y. Feb. 29, 2012).

8

have filed. *See Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd.,* Civil Action No. CV-05-453(DGT), 2005 U.S. Dist. LEXIS 38214, at *2 (E.D.N.Y. Dec. 22, 2005).

***Third***, granting a stay in this case will conserve judicial resources, prevent duplicative litigation, and ensure uniform adjudication. "[C]ourts in this Circuit have recognized that stays pending transfer will also conserve judicial resources, one of the fundamental goals of multidistrict litigation practice." *Royal Park*, 941 F. Supp. 2d at 373 (internal citations and quotations omitted); *Ritchie Capital Mgmt., LLC v. GE Capital Corp.*, 87 F. Supp. 3d 463, 471 (S.D.N.Y. 2015) ("[A] stay serves the judicial and public interest in letting the JPML decide if the interests in efficiency and economy favor consolidation and transfer.").

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 96 (2d Cir. 2012) (internal citations and quotations omitted). Thus, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL panel because of the judicial resources that are conserved." *Rivers*, 980 F. Supp. at 1362.

Here, a stay would conserve judicial resources and maximize efficiency for both the litigants and the Court. If the Panel consolidates the related cases and transfers them to the appropriate federal district court, landlords may need to prepare and submit a consolidated amended complaint, and the transferee court will need to consider numerous issues, including motions directed to Gap's virtually uniform claims and counterclaims, as well as pretrial scheduling, and discovery for the consolidated litigation. It would not make sense to proceed further with this or any of the other Actions now in light of the possibility that all of it would

need to be redone by a transferee court. *See Royal Park*, 941 F. Supp. 2d at 372 (S.D.N.Y. 2013) ("If the instant cases are not stayed pending a decision on transfer by the JPML, Defendants may face the risk of inconsistent pre-trial rulings on Plaintiff's motions to remand."); *Animal Sci. Prods.*, 2005 U.S. Dist. LEXIS 38214 at *2 ("[A]ny decisions made before the MDL Panel rules on the transfer application could be contradicted by another court or might need to be re-litigated."); *Specrite Design, LLC v. Elli N.Y. Design Corp.*, 16 Civ. 6154 (ER), 2017 U.S. Dist. LEXIS 113416, at *12 (S.D.N.Y. July 20, 2017) ("[T]o let this action go forward without a stay would lead to unnecessary litigation that is time-consuming for this Court and for the parties.").

Finally, the interests of the public and persons not parties to this litigation weigh in favor of a stay. There are numerous other retailers and landlords across the country litigating the same issues underlying this matter.[24] These retailers and landlords would benefit from one centralized court deciding these issues, rather than referring to multiple and potentially contrasting decisions across jurisdictions.

In sum, each of the relevant factors counsels in favor of granting the Motion and entering a stay.

---

[24] Esther Fung, "Landlords' New Credo for Late-Paying Retail Tenants: I'll See You in Court," Wall Street Journal (June 9, 2020) https://www.wsj.com/articles/landlords-new-credo-for-late-paying-retail-tenants-ill-see-you-in-court-11591704000 .

## CONCLUSION

For these reasons, Gap respectfully requests that the Court grant this Motion and stay all proceedings until after the Panel has decided whether to centralize these actions under 28 U.S.C. § 1407.

Dated: August 17, 2020
      New York, New York

Respectfully submitted,

**DAVIS & GILBERT LLP**

By: */s/ Joshua H. Epstein*
Joshua H. Epstein (JE-2187)
Jesse B. Schneider (JS-4080)
1740 Broadway
New York, NY 10019
(212) 468-4800

**ROBINS KAPLAN LLP**
Lisa M. Coyle (LC-6750)
Robins Kaplan LLP
399 Park Avenue, Suite 3600
New York, NY 10022
212-980-7400

Michael A. Geibelson (*pro hac vice* forthcoming)
Daniel Allender (*pro hac vice* forthcoming)
Robins Kaplan LLP
2049 Century Park East Ste. 3400
Los Angeles, CA 90067
310-550-0130

*Attorneys for The Gap, Inc.*